## Case No. 3,529.

### The CYNOSURE.

[1 Spr. 88;[1] 7 Law Rep. 226.]

District Court, D. Massachusetts. July Term, 1844.

IMPRISONMENT OF COLORED SEAMEN — CONSTITUTIONALITY OF STATE STATUTE — REMEDIES OF SEAMEN.

1. The statute of Louisiana, which prohibits colored seamen belonging to vessels of the United States from being brought in such vessels into the ports of that state, is unconstitutional.

[Cited in The William Jarvis, Case No. 17,-697.]

2. A seaman who was imprisoned at New Orleans under that statute, cannot recover damages of the master therefor.

3. Such seaman is not liable for the prison expenses paid by the master, as required by the statute.

[This was a libel for seaman's wages, in which Martin was libellant, and McClure respondent. The amount of wages was adjusted between the counsel, with the agreement that one item should be left to the decision of the court, the point being a rebate arising under a recent statute of Louisiana. Stat. 1842, No. 123.][2]

———

[1] [Reported by F. E. Parker, Esq., assisted by Charles Francis Adams, Jr., Esq., and here reprinted by permission.]
[2] [From 7 Law Rep. 226.]

R. H. Dana, Jr., for libellant.

A. H. Fiske, for respondent.

SPRAGUE, District Judge. The libellant, a man of color, was a mariner on board the American ship Cynosure, on a voyage to New Orleans. On arriving at that port he was, pursuant to a statute of the state of Louisiana,[3] taken from the ship, and committed to jail. [He was detained there during the stay of the vessel, and delivered up to the master when the vessel sailed.][4] The master was compelled to pay the expenses of that imprisonment, and now claims to have the amount deducted from the wages of the mariner. The libellant, on the other hand, claims compensation in damages, for being carried to New Orleans, and subjected to imprisonment.

---

[3] Statute of Louisiana, 1842, No. 123. Sec. 1. Be it enacted by the senate and house of representatives of the state of Louisiana in general assembly convened, that from and after the time specified in this act, no free negro, mulatto or person of color shall come into this state on board of any vessel or steamboat, as a cook, steward, mariner, or in any employment, on board that vessel or steamboat, or as a passenger; and in case any vessel or steamboat shall arrive in any port, or harbor, or landing on any river in this state, from any other state or foreign port, having on board any free negro, mulatto or person of color, the harbor-master or other person having charge of such port shall forthwith notify, &c. . . . Whereupon the judge shall immediately issue a warrant to apprehend and bring every such free negro, mulatto or colored person before him, and shall forthwith commit him or her to the parish jail, there to be confined until such vessel or steamboat is ready to proceed to sea, when the master of such vessel or steamboat, shall, by the written order of the judge, take and carry away out of this state, every such free negro, mulatto or person of color, and pay the expenses of his or her apprehension and detention.

Section 2, requires the master of every vessel having such free negro on board, to give bond with sureties, in $500 for each negro, to pay the expenses of his arrest and detention, and imposes a penalty of $1000 upon the master and owner, if this bond is not given within three days after the vessel's arrival.

Section 3, provides that if the master neglect or refuse to take away such negro in his vessel, the negro shall be sent out of the limits of the state by the sheriff, the expense of which transportation shall be borne by the negro, if he has the means of payment, if not, then at the expense of the state, to be paid out of the penalty recoverable of the master or owner, under this act.

Section 4, imposes a punishment of five years' imprisonment upon any negro, &c., who shall return to the state after having been imprisoned and transported as above.

Section 11, requires every master of a vessel coming from another state or from a foreign port, to make a report under oath, of the name, age and occupation of every free negro, &c., on board his vessel, within twenty-six hours after his arrival, under a penalty of $100 for each omission.

[4] [From 7 Law Rep. 226.]

---

The statute referred to, prohibits free persons of color from coming into the state, as mariners on board any vessel, and requires them to be imprisoned, and the master to give bonds to carry them out of the state, and compels him to pay the expenses of their imprisonment. A state cannot thus interfere with the navigation of the United States, nor dictate to the owners of an American vessel the composition of her crew. The only ground of disability is color. If one color may be excluded, any other may;—if dark complexions may be subject to prohibition, white may be equally so;—or both whites and blacks may be excluded; or any other physical quality, or religious or political opinion, may be selected as the criterion of exclusion, or admission. If the parties may be subjected to imprisonment, expenses and bonds, any other penalties and punishments may be inflicted. Such legislation is not consistent with the regulations of commerce established by the laws of the United States, pursuant to authority expressly given by the constitution; and this statute is invalid.

Another provision of the constitution declares, that the "citizens of each state shall be entitled to all privileges and immunities of citizens in the several states." Article 4, § 2.

That provision seems to be wholly ignored by the Louisiana statute. This, however, is not material in the present case, because there is no allegation, or proof, that the libellant was a citizen of any state. He is not, therefore, in a position to invoke the protection of that clause of the constitution.

The libellant shipped to go to any port or ports in the United States, for a term of six months. The master, in going to New Orleans, did no more than he lawfully might, and was not bound to anticipate that his crew would there be subjected to unconstitutional imprisonment. The claim for damages is not, therefore, sustained.

The expenses were paid by the master, not by request of the mariner, but by the express requirement of the statute. If this burden was rightfully imposed, it now rests where the law has placed it; if wrongfully, there is no reason why the master, on whom it has fallen, should throw it upon the mariner, who is quite as blameless. No deduction is to be made from the wages.

See the opinion of Mr. Justice Johnson, delivered in South Carolina, in the case of Elkison v. Deliesseline [Case No. 4,366]; The Wilson [Id. 17,846]; Roberts v. Yates [Id. 11,919].

———

CYNTHIA, The (BARTELSON v.). See Case No. 1,067.

CYNTHIA, The (GILES v.). See Case No. 5,424.